■ TISHMAN CONSTRUCTION CORP. OF NEW YORK et al., Respondents, v GREAT AMERICAN INSURANCE COMPANY, Appellant, et al., Defendant. [861 NYS2d 38]—

Judgment, Supreme Court, New York County (Jane S. Solomon, J.), entered March 23, 2007, granting plaintiffs' cross motion for summary judgment declaring, inter alia, the defendant Great American Insurance Company is obligated to indemnify plaintiffs Tishman Construction Corp. of New York and Carnegie Hall Corporation in connection with the underlying action entitled *Robert J. Massie v Carnegie Hall Corp.*, New York County Clerk's index No. 124269/00, and denying Great American leave to amend its answer to assert affirmative defenses and counterclaims based on the antisubrogation rule, unanimously modified, on the law, to vacate that part of the judgment requiring defendant Great American Insurance Company to indemnify plaintiffs Tishman Construction Corp. of New York and Carnegie Hall Corporation in connection with the underlying action entitled *Robert J. Massie v Carnegie Hall Corp.*, et al., and otherwise affirmed, without costs. Judgment, same court (Nicholas Doyle, Special Ref.), entered October 1, 2007, fixing the amount which Great American and Schiavone Construction Company were required to pay plaintiffs consistent with the prior judgment, unanimously modified, on the law, to vacate that part of the judgment requiring Great American to make payment pursuant to its policy, and otherwise affirmed, without costs.

Plaintiff Carnegie Hall Corporation retained plaintiff Tishman Construction Corporation to manage construction of a new music hall. Pursuant to its contract with Carnegie, Tishman procured a commercial general liability insurance policy from plaintiff National Union Fire Insurance Company naming Carnegie as an additional insured. The policy limits were $1,000,000 per occurrence/$2,000,000 aggregate.

Tishman retained defendant Schiavone Construction Company to perform the excavation, foundation, structural demolition, structural steel and concrete work on the project. Under their contract, Schiavone agreed to defend and indemnify Tishman and Carnegie for claims arising out of its own negligence, and to procure insurance of at least $10,000,000 naming Tishman and Carnegie as additional insureds. In order to satisfy the latter requirement, Schiavone secured two separate policies.

The first was a commercial general liability policy with limits of $1,000,000 per occurrence/$2,000,000 aggregate. This was issued by National Union, the same insurer that issued the policy to Tishman. The second policy acquired by Schiavone was a "Protector Commercial Umbrella Coverage" policy issued by defendant Great American with limits of $25,000,000.

Two Schiavone employees were injured on the construction site when a hoist failed. Both of the employees commenced actions against Tishman and Carnegie. One of the actions, brought by Richard Maikowski, settled before trial for $785,000. The other, brought by Robert J. Massie, resulted in a jury verdict reduced by the trial court to $2,324,146. National Union paid the entire Maikowski settlement from the insurance policy it issued to Schiavone.

Tishman, Carnegie and National Union commenced this action against Great American and Schiavone for a declaration that after National Union paid out the remainder of the proceeds of the policy it issued to Schiavone, the unsatisfied portion of the Massie judgment would be the responsibility of Schiavone pursuant to its agreement to indemnify Tishman and Carnegie. The complaint further sought a declaration that Great American was required to indemnify them to the extent the judgment exceeded the National Union policy issued to Schiavone, since the Great American excess policy named them as additional insureds.

Great American moved to amend its answer to assert additional affirmative defenses and counterclaims premised on the antisubrogation rule, which bars an insurer from proceeding against its own insured because of the conflict of interest that it presents. It argued that National Union's sole intention in commencing the action was to protect the separate policy it had issued to Tishman. Plaintiffs cross-moved for summary judgment on the claims in their complaint.

The motion court denied Great American's motion and granted plaintiffs' cross motion. It held that the Great American policy was primary coverage for Tishman and Carnegie after the exhaustion of the National Union primary policy covering Schiavone, and entered judgment requiring Great American to satisfy the Massie judgment. It further ordered Schiavone to pay any sums not paid by Great American. The court referred the matter to a Special Referee to hear and determine the amounts which Great American or Schiavone were required to pay. The Special Referee fixed damages in favor of National Union and Travelers Indemnity Company, Carnegie's insurer.

We find, based on our recent decision in *Bovis Lend Lease*

*LMB, Inc. v Great Am. Ins. Co.* (53 AD3d 140 [2008]), that the court erred in declaring that plaintiffs were entitled to indemnification from Great American. Because Great American's policy was an excess policy which provided the final tier of coverage, it should not have been invoked prior to the exhaustion of the National Union primary policy issued to Tishman.

In *Bovis*, we analyzed a situation involving similar insurance policies. There, the owner and construction manager were insured by Illinois National Insurance Company. The general contractor was insured by Liberty Insurance Underwriters, Inc. under a commercial general liability policy. It was further insured by Westchester Fire Insurance Company with a commercial umbrella liability policy which afforded $10,000,000 in coverage. J & A Concrete Corp., the injured worker's employer, was insured by QBE Insurance Corporation under a commercial general liability policy. J & A was further insured by United National Insurance Corp. pursuant to a commercial general umbrella liability policy which afforded $10,000,000 in coverage. The owner, construction manager and Illinois sought a judgment declaring the order of priority of the foregoing insurance policies. They argued that since both the general contractor and the subcontractor had agreed to defend and indemnify the owner and construction manager, the policies which were procured to carry out those promises should be exhausted before they had to look to their own carrier.

We held that the priority of coverage in *Bovis* was, after the exhaustion of the QBE primary policy, first the Liberty primary policy, then the Illinois policy and then the two umbrella policies, on a pro rata basis (*id.* at 159-160). In considering the primacy of the insurance policies in *Bovis*, we reiterated that in the context of construction projects, the terms of the individual policies take precedence over the terms of the various trade contracts for purposes of determining priority (*id.* at 145-146). We further stated that in analyzing each policy to determine the priority of coverage, a court is required to consider the intended purpose of each policy " 'as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance' " (*id.* at 148, quoting *State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369, 374 [1985]).

Accordingly, we noted that the insuring provisions of the United and Westchester policies established that they were "true" excess policies which trump other policies written to

provide primary coverage (*id.* at 147-150, 155-156). We further observed that the premiums for the United and Westchester policies were significantly smaller than the premiums for the primary policies at issue (*id.* at 150). This confirmed that those policies were "true" excess policies, since the low premiums reflected the underwriters' assessments that the policies were unlikely to ever be invoked.

Here, it is similarly apparent that the Great American policy was intended only to provide excess insurance. First, the policy language establishing it as a pure excess policy is substantially similar to the language in the United policy in *Bovis* on which we relied to declare that policy purely excess. In addition, the premium for the policy was $60,000, for coverage of $25,000,000. In contrast, the premium for the National Union policy issued to Tishman was significantly higher, although the coverage was for only $2,000,000 in the aggregate.

Plaintiffs argue that National Union's position as the final tier of coverage is the "Other Insurance" provision in the National Union policy, which provides as follows:

"This insurance is excess over any other insurance, whether primary, umbrella, excess, contingent or on any other basis . . .

"(4) If a 'claim' arises out of the actions of a hired contractor or subcontractor who has agreed to either:

"a. Contractually indemnify the 'insureds' against whom 'claims' may be made for any 'claims' resulting from the actions of the hired contractor or subcontractor, or

"b. name the 'insureds' against whom 'claims' may be made as Additional Insureds on the hired contractor's or subcontractor's commercial general liability insurance policy." However, in *Bovis* we held that the existence of such a clause did not transform a policy which was clearly intended to be excess into a lower-tier policy, as indicated by the comparatively small premium (*id.* at 150-151, citing *Cheektowaga Cent. School Dist. v Burlington Ins. Co.*, 32 AD3d 1265 [2006]).

Nor does the "Other Insurance" clause in the Great American policy, which plaintiffs also rely on, change this analysis. That clause provides: "If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy."

Plaintiffs claim that because the National Union policy's "Other Insurance" clause states that it is excess over any other policies, the last sentence of the Great American "Other Insurance" clause must be construed as an acknowledgment that Great American's policy is first in line. However, in *Bovis*, we also rejected this argument, relying on cases from other jurisdictions which hold that "a reference in an insurance policy to insurance 'specifically purchased to apply in excess' of the subject policy (or similar phraseology) means a higher-level policy that specifically designates the subject policy as underlying insurance" (*id.* at 152). Here, the National Union policy is not a "higher-level" policy, and it does not refer to the Great American policy. Accordingly, the clause is unavailing to plaintiffs' argument.

Because we vacate those parts of the judgments appealed which require Great American to indemnify plaintiffs based on the foregoing analysis, we need not reach the issue of whether National Union violated the antisubrogation rule by commencing this action. Concur—Mazzarelli, J.P., Andrias, Friedman and Sweeny, JJ.