[900 NYS2d 24]

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,
v ST. PAUL MERCURY INSURANCE COMPANY et al., Respondents. (And Other Actions.)

First Department, April 22, 2010

**APPEARANCES OF COUNSEL**

*Nixon Peabody LLP*, New York City (*Aidan M. McCormack, Mark L. Deckman* and *Jonathan Schapp* of counsel), for appellant.

*Lazare Potter & Giacovas, LLP*, New York City (*Stephen M. Lazare* of counsel), for St. Paul Mercury Insurance Company, respondent.

*Nicoletti, Hornig & Sweeney*, New York City (*Barbara A. Sheehan* and *Lawrence C. Glynn* of counsel), for Yonkers Contracting Company, Inc., respondent.

**OPINION OF THE COURT**

RICHTER, J.

In this insurance coverage dispute, plaintiff Insurance Indemnity Company of North America (IICNA) seeks reimburse-

ment from defendants St. Paul Mercury Insurance Company (St. Paul) and Yonkers Contracting Company, Inc. (Yonkers) for a $2 million payment IICNA made to settle an underlying personal injury suit. In the underlying action, Eugene Flood, an employee of Yonkers, was performing restoration work on the Manhattan Bridge when he was injured. Yonkers was retained by the City of New York as the general contractor on the restoration project. As part of this project, Yonkers hired subcontractor Romano Enterprises of New York, Inc. (Romano) to paint certain portions of the bridge. In painting the bridge, Romano had draped a series of steel cables along the sides of the bridge to serve as supports from which to hang scaffolding.

Two days before Flood's accident, Ronald Taylor, a Yonkers superintendent, spotted a cable left on the bridge by Romano that would interfere with Yonkers's work. Taylor asked John Graham, a Romano foreman, to remove the cable. Flood also told Graham that the cable had to be removed. Graham assured both men that he would make sure the cable was taken down, but failed to do so. On the day of the accident, Yonkers workers attempted to hoist a five-ton iron beam horizontally through the bridge's lattices and suspension cables. Halfway through the process, the beam became stuck on the cable left by Romano. Flood climbed onto the beam to investigate and walked along its length looking for the obstruction. As he reached the end of the beam, the beam tilted and Romano's cable snapped, hitting Flood in the ankle and injuring him.

Under its subcontract with Yonkers, Romano agreed to (1) indemnify and hold harmless the City and Yonkers from any claims arising from or in connection with any acts or omissions in the performance of Romano's work and (2) procure all necessary and adequate insurance naming the City and Yonkers as additional insureds. In accordance with the subcontract, Romano obtained a policy with nonparty Royal Insurance Company of America (Royal), which provided for $1 million in primary general liability coverage. Romano's excess insurer, IICNA, supplied umbrella excess liability coverage in the amount of $10 million. The City and Yonkers were additional insureds under both the Royal and IICNA policies. St. Paul insured Yonkers, and the City as an additional insured, under a commercial policy with general liability coverage of $1 million and umbrella coverage of $5 million.

In January 2001, Flood commenced the underlying action against the City and Romano, asserting claims under the Labor

Law as well as under principles of common-law negligence.* The City tendered its defense to St. Paul, which then assigned counsel to represent the City. Romano was represented by counsel assigned by its carrier, Royal. Several months later, St. Paul asked Romano to assume the City's defense and indemnification pursuant to the indemnification clause in the Yonkers-Romano subcontract. Romano agreed that its indemnification obligation to the City was clear and recommended that Royal accept tender of the City's defense. In response, Royal agreed to indemnify and defend the City without reservation or qualification.

Trial of Flood's personal injury action began in February 2003. Soon thereafter, Royal tendered the defense of the City and Romano to IICNA since it appeared that Flood's claim would exceed Royal's policy limits. After opening statements, the court granted Flood's motion for a directed verdict against the City as to liability on his Labor Law § 240 (1) claim, finding the City vicariously liable as the owner of the bridge.

On February 10, 2003, after Flood's case rested on the remaining issues, IICNA settled the case for $3 million. IICNA negotiated the settlement whereby Royal would pay $1 million and IICNA the $2 million balance. Flood's counsel stated on the record that the settlement was made with respect to Flood's claim against the City and that his client's claims against Romano would be discontinued with prejudice. However, the general release stated that the settlement amount was paid on behalf of both the City and Romano. St. Paul did not participate in the settlement agreement, having concluded that Romano was ultimately liable as a result of its agreement to indemnify the City, a position that Romano had previously agreed with.

IICNA subsequently commenced this action against St. Paul and Yonkers, seeking to recoup the $2 million it had paid to settle the underlying action. In the first cause of action, brought against St. Paul, IICNA maintained that the St. Paul policy covering the City was the primary insurance covering the loss at issue. IICNA sought a declaration that the IICNA policy is excess to the St. Paul policy, thus obligating St. Paul to reimburse IICNA the $2 million it paid to Flood. In the second cause of action, sounding in subrogation, IICNA sought a judgment against Yonkers in the amount of $2 million. IICNA contended that Yonkers was contractually obligated to indemnify the City

---

* Yonkers was never made a party to the underlying litigation.

and thus was responsible for reimbursing IICNA for the payment IICNA made purportedly on the City's behalf. The motion court denied IICNA's cross motions for summary judgment as against Yonkers and St. Paul and granted St. Paul's and Yonkers's motions for summary judgment dismissing the complaint (2008 NY Slip Op 30462[U]).

■ We conclude that IICNA is not entitled to reimbursement from St. Paul because St. Paul neither participated in the settlement negotiations nor agreed to the amount of the settlement. In *AIU Ins. Co. v Valley Forge Ins. Co.* (303 AD2d 325 [2003]), this Court found that where the insurer did not take part in settlement negotiations or agree to the settlement of an underlying personal injury action, it was not required to contribute to that settlement. Similarly here, IICNA, which orchestrated the underlying settlement, did not have the authority to bind St. Paul. We also note that the St. Paul insurance policy prohibited the City from assuming any financial obligation without St. Paul's consent (*see Royal Zenith Corp. v New York Mar. Mgrs.*, 192 AD2d 390 [1993]). Since it is undisputed that St. Paul did not consent to the settlement, IICNA may not seek reimbursement from St. Paul.

There is no merit to IICNA's claim that St. Paul abandoned its insured, the City. In fact, St. Paul tendered the City's defense to Romano pursuant to Romano's contractual obligation to indemnify the City. Upon such tender, Romano and its insurer, Royal, unconditionally and without reservation agreed to defend and indemnify the City. Under these circumstances, it cannot be said that St. Paul abandoned its insured. Nor, as IICNA argues, did St. Paul take an improper coverage position when it declined to participate in the settlement. St. Paul correctly determined that the City, whose liability was purely statutory, was entitled to contractual indemnification from Romano and a complete pass-through of liability to Romano and its insurers, Royal and IICNA (*see AIU Ins. Co.*, 303 AD2d at 325-326).

IICNA unpersuasively argues that the City could not transfer its liability to Romano because the accident was not caused by Romano's negligence. However, the contract between Romano and Yonkers did not require any showing of negligence on Romano's part. Instead, it required Romano to indemnify the City from any claims "arising from or in connection with any acts or omissions" in the performance of Romano's work. It is undisputed that Flood's injury occurred when a cable installed by Romano as part of the restoration project, and that Romano failed

to remove, obstructed the work being performed, and snapped and hit Flood in the ankle. Thus, there can be no question that the accident arose from and was connected with Romano's act or omission (*see Masciotta v Morse Diesel Intl.*, 303 AD2d 309 [2003]).

There is no merit to IICNA's argument that the St. Paul policy covering the City as an additional insured must be exhausted prior to the application of the IICNA policy. In determining priority of coverage among different insurers covering the same risk, a court must consider the intended purpose of each policy "as evidenced by both its stated coverage and the premium paid for it, as well as . . . the wording of its provision concerning excess insurance" (*Tishman Constr. Corp. of N.Y. v Great Am. Ins. Co.*, 53 AD3d 416, 419 [2008] [internal quotation marks and citation omitted]). Here, however, priority of coverage is irrelevant. Even if St. Paul's coverage of the City were primary to that of IICNA, the City's liability still would pass through to Romano and its insurers, Royal and IICNA. This is particularly so because Romano accepted tender of the City's defense and unconditionally and without reservation agreed to defend and indemnify the City. In light of this, and of the fact that IICNA settled the action without the consent of St. Paul, IICNA's claim for reimbursement from St. Paul must fail (*see AIU Ins. Co.*, 303 AD2d at 325).

In its second cause of action, brought in subrogation, IICNA alleged that Yonkers was responsible for reimbursing IICNA for the $2 million it paid on the City's behalf. Subrogation is an equitable doctrine that "allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997]). However, under the antisubrogation rule, an insurer "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered" (*North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993]).

IICNA's claim against Yonkers is barred by the antisubrogation rule because Yonkers was an additional insured under the excess policy issued by IICNA. That policy includes as an insured any entity included as an additional insured under the underlying Royal policy. The Royal policy, in turn, provides that "[a]ny person or organization [Romano is] required by written contract . . . to name as an insured is an insured but only with

respect to liability arising out of . . . '[Romano's] work' performed for that insured."

In a similarly worded additional insured provision, the phrase "arising out of" was interpreted by the Court of Appeals "to 'mean originating from, incident to, or having connection with,' and requires 'only that there be some causal relationship between the injury and the risk for which coverage is provided'" (*Worth Constr. Co., Inc. v Admiral Ins. Co.*, 10 NY3d 411, 415 [2008] [citations omitted]). The focus "is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained" (*id.* at 416 [internal quotation marks and citation omitted]).

There is no question that the liability here arose out of Romano's work. Flood's injury occurred because Romano failed to remove a cable it had erected, despite being requested to do so. That same cable obstructed the work being performed by Yonkers, and when Flood went to investigate, it snapped and hit him in the ankle. Accordingly, since Yonkers was an additional insured under the IICNA policy, IICNA is barred by the anti-subrogation rule from seeking reimbursement from Yonkers.

We modify only to declare in St. Paul's favor (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *cert denied* 371 US 901 [1962]).

We have considered IICNA's remaining contentions and find them unavailing.

Accordingly, the order of Supreme Court, New York County (Marylin G. Diamond, J.), entered February 21, 2008, which denied IICNA's cross motions for summary judgment against St. Paul and Yonkers and granted St. Paul's and Yonkers's motions for summary judgment dismissing the complaint, should be modified, on the law, to declare that St. Paul is not obligated to indemnify IICNA in the amount of $2 million, and otherwise affirmed, without costs.

GONZALEZ, P.J., MAZZARELLI, SWEENY and RENWICK, JJ. concur.

Order, Supreme Court, New York County, entered February 21, 2008, modified, on the law, to declare that St. Paul Mercury Insurance Company is not obligated to indemnify Indemnity Insurance Company of North America in the amount of $2 million, and otherwise affirmed, without costs.