20-1474-cv
*Century Surety Co. v. Metro. Transit Auth. et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand twenty-one.

PRESENT:
> BARRINGTON D. PARKER,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

Century Surety Company,

> *Plaintiff-Appellee*,

v.                                                            20-1474-cv

Metropolitan Transit Authority, Long Island
Railroad, Admiral Insurance Company,

> *Defendants-Appellants*,

Rukh Enterprises, Inc., Marcelo DeJesus,

> *Defendants*.

---

FOR DEFENDANTS-APPELLANTS:        COLLEEN E. HAYES (Dennis M. Wade, Vivian S.
                                  Turetsky, Douglas Giombarrese, *on the brief*), Wade
                                  Clark Mulcahy LLP, New York, NY.


FOR PLAINTIFF-APPELLEE:           DAN D. KOHANE, Hurwitz & Fine, P.C., Buffalo, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 3, 2020 judgment of the district court based upon its January 29, 2019 Memorandum Opinion and Order is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this order.

Defendants-Appellants Metropolitan Transit Authority and Long Island Railroad (collectively, "LIRR"),[1] and Admiral Insurance Company ("Admiral"), appeal from the March 3, 2020 judgment of the United States District Court for the Southern District of New York (Furman, *J.*), granting declaratory judgment in favor of Plaintiff-Appellee Century Surety Company ("Century Surety") based upon its January 29, 2019 Memorandum Opinion and Order. This appeal concerns a dispute between two insurance companies seeking a declaratory judgment as to their rights and obligations regarding priority of coverage in connection with their liabilities to pay into a settlement resolving an underlying tort action.

On April 8, 2013, LIRR contracted with general contractor Defendant Rukh Enterprises, Inc. ("Rukh") to complete a railroad bridge lead paint removal and repainting project on Metropolitan Transit Authority property—the Cypress Bridge in Queens, NY (the "trade contract"). To execute this project, Rukh hired a non-party subcontractor, East Coast Painting & Maintenance ("East Coast"), to complete certain lead-related work on the project because Rukh was not certified to perform lead-related activities. This project implicated not only the underlying trade contract, but four insurance policies—the Admiral railroad protective liability insurance policy issued to LIRR (the "Admiral policy"), the Arch commercial general liability (the "Arch policy") and the

---

[1] The Long Island Railroad is an agency of the Metropolitan Transit Authority.

Century Surety commercial excess liability coverage (the "Century Surety policy") policies issued to Rukh,[2] and the Harleysville Preferred Insurance Company ("Harleysville") policy issued to East Coast. On September 13, 2013, an employee of subcontractor East Coast suffered an injury while working on the Cyprus Bridge project, prompting the East Coast employee to sue Rukh and LIRR in New York State court alleging negligence. Rukh, East Coast, and LIRR eventually reached a settlement on December 16, 2019, for which three of the four implicated insurance companies—Admiral (for LIRR), Arch (for Rukh), and Harleysville (for East Coast)—agreed to pay into the settlement amount. Century Surety did not contribute to the settlement and disclaimed all coverage.

On January 27, 2017, Century Surety filed a complaint in the United States District Court for the Southern District of New York against Rukh (its insured), Marcelo DeJesus (the injured employee in the underlying state court action), and LIRR, seeking a declaratory judgment that it had no duty to defend or indemnify any party in the state court action. On April 4, 2017, Admiral filed a separate complaint against Century Surety, also seeking a declaratory judgment that Century Surety was obligated to defend and indemnify Admiral's insured, LIRR, and that the policy limits in Century Surety's excess policy would have to be exhausted before Admiral's policy would be implicated. The district court consolidated these two actions on June 16, 2017. Thereafter, Century Surety moved for summary judgment against Rukh, LIRR, Admiral, and Marcelo DeJesus (who was ultimately dismissed as a party in the district court action for failure to serve). LIRR, Admiral, and Rukh cross-moved for summary judgment.

On January 29, 2019, as relevant here, the district court granted summary judgment in part in favor of Century Surety. The district court concluded that based upon the language contained in the "Other Insurance" provision in the Century Surety policy, that policy was a "true excess policy"

---

[2] The Arch policy issued to Rukh was primary to the Century Surety policy. In other words, Century Surety would not have to tender payment for any covered liability until the Arch policy limits were exhausted.

that was not liable to tender payment until the other available insurance policies, including the Admiral policy, had tendered payments pursuant to their policy limits.[3] The district court also denied summary judgment in part against Century Surety and scheduled trial for the remaining triable issue, but held in a March 3, 2020 judgment that it no longer needed to proceed with trial to resolve that issue in light of its conclusion that the Century Surety policy is a true excess policy as well as the 2019 settlement of the underlying state court action in an amount that would not exhaust the policy limits for the other relevant insurance policies.[4] Accordingly, the district court "granted[] [Century Surety] a declaratory judgment that it is not obligated to provide insurance coverage for the Underlying Action" and closed the case. Special App'x at 35. Appellants timely appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to reverse the judgment of the district court and remand the case.

*          *          *

We review a district court's ruling on cross-motions for summary judgment de novo. *Webster v. Mt. Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004); *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000). "Summary judgment is only appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Terwilliger*, 206 F.3d at 244; *see also* Fed. R. Civ. P. 56(c).

As a threshold matter, Century Surety argues on appeal that the district court correctly concluded that the "Other Insurance" provision in the Century Surety policy qualifies that policy as a "true excess policy," such that Century Surety is not liable to tender payment until all other

---

[3] The "Other Insurance" provision in the Century Surety policy provides that the policy is "excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis." App'x at 760.

[4] The district court further denied LIRR, Admiral, and Rukh's cross-motion for summary judgment.

4

applicable insurance policies, including the Admiral policy, are exhausted. Appellants, however, do not dispute Century Surety's contention that the Century Surety policy is a "true excess policy." Instead, appellants argue that the district court erred in failing to recognize the legal effect of the indemnity agreement in the underlying trade contract between Rukh and LIRR, under which Rukh agrees to indemnify LIRR for liabilities arising out of the Cyprus Bridge project. According to appellants, regardless of whether the Century Surety policy is a "true excess policy," the indemnity agreement between Rukh and LIRR should control and Century Surety must tender payment and exhaust its policy limits ahead of Admiral. The parties agree that New York law governs this analysis.

We agree with appellants that the district court erred in concluding that Admiral is liable to tender payment before Century Surety. The principal issue on appeal is which relevant contractual term governs—the indemnity agreement in the underlying trade contract between Rukh and LIRR or the "Other Insurance" provision in the Century Surety policy. On the one hand, if the indemnity agreement controls, then Century Surety must pay into the settlement amount and exhaust its policy limits before Admiral pursuant to Rukh's obligation to indemnify LIRR. On the other, if the "Other Insurance" provision in the Century Surety policy controls, then Admiral must pay into the settlement amount and exhaust its policy limits before Century Surety because the Century Surety policy would be excess to any other applicable insurance policy, including the Admiral policy.

As this question is one of New York law, we must first look to whether New York's highest court has resolved this issue. Because we find that it has not, we must predict how the New York Court of Appeals would rule on this question of insurance law. *See Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir.) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." (internal quotation marks omitted)), *certified question accepted*, 32 N.Y.3d 1211, *and certified*

5

*question answered*, 34 N.Y.3d 224 (2019). "In determining how the Court of Appeals would rule on this legal question, the decisions of New York State's Appellate Division are helpful indicators." *Id.* (internal quotation marks omitted). "We [can] also consider relevant cases from jurisdictions other than New York . . . to predict" New York law. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

Looking to the decisions of New York State's Appellate Division, we conclude that the holdings in *Indemnity Insurance Co. of North America v. St. Paul Mercury Insurance Co.* (*Indemnity*), 74 A.D.3d 21 (1st Dep't 2010), and *Arch Insurance Co. v. Nationwide Property & Casualty Insurance Co.* (*Arch*), 175 A.D.3d 437 (1st Dep't 2019), are particularly instructive. Both *Indemnity* and *Arch* involved a contractor who was hired to perform a construction project under the terms of a trade contract. *Indemnity*, 74 A.D.3d at 23; *Arch*, 175 A.D.3d at 437. In both instances, the trade contract contained an indemnity agreement in which the contractor agreed to indemnify the owner of the construction project. *Indemnity*, 74 A.D.3d at 23; *Arch*, 175 A.D.3d at 437. Like here, the effect of the indemnity agreement was at odds with the terms of the contractor's insurance policy, which purportedly provided that the insurance was excess to any other available insurance policy. *See Indemnity*, 74 A.D.3d at 26; *Arch*, 175 A.D.2d at 437–38.

Under these circumstances, the *Indemnity* court concluded that "priority of coverage" as determined by "the wording of [an insurance policy's] provision concerning excess insurance," (*i.e.*, an "Other Insurance" provision), was "irrelevant" because of the existence of an underlying indemnity agreement in the trade contract between the insureds. *Indemnity*, 74 A.D.3d at 26 (internal quotation marks omitted). Specifically, the *Indemnity* court reasoned that even if the contractor's insurance was excess to the owner's insurance, the contractor's insurance would pay first because "the [owner's] liability still would *pass through* to [the contractor] and its insurers." *Id.* (emphasis added). Likewise, the *Arch* court held that, "[s]ince [o]wners were entitled to

6

contractual indemnification from [the contractor] and a complete pass through of liability, the [contractor's insurer] must respond before the [owner's insurer] issued to [o]wners." *Arch*, 175 A.D.3d at 438. Based on these most recent decisions of New York State's Appellate Division, we predict that the New York Court of Appeals would adopt the holdings set forth in *Indemnity* and *Arch*—that an indemnity agreement in the underlying trade contract between insureds governs over the terms of an insurance policy concerning priority of coverage.[5]

Century Surety nevertheless maintains that New York law requires that the terms of an insurance policy regarding priority of coverage always govern over any underlying indemnity agreement between the insureds. In support of that proposition, Century Surety relies primarily on *Bovis Lend Lease LMB, Inc. v. Great American Insurance Co.* (*Bovis*), 53 A.D.3d 140 (1st Dep't

_____

[5] We find Century Surety's efforts to distinguish *Indemnity* and *Arch* unavailing. As to *Indemnity*, Century Surety first maintains that *Indemnity* is distinguishable because, in *Indemnity*, the indemnitor's insurer expressly agreed to indemnify the indemnitee, whereas here, Century Surety, as Rukh's insurer, refused to indemnify LIRR. According to Century Surety, this distinction is important because the holding in *Indemnity* was based upon the indemnitor's insurer's acceptance of the indemnitor's indemnity obligation. However, Century Surety mischaracterizes *Indemnity*. As an initial matter, the *Indemnity* court found only that the indemnitor's *primary* insurer, not the indemnitor's *excess* insurer, agreed to indemnify the indemnitee. *See Indemnity*, 74 A.D.3d at 24. Thus, *Indemnity* cannot be distinguished on that basis because here Rukh's primary insurer, Arch, has already accepted its indemnification obligation and tendered payment. Moreover, the holding in *Indemnity* was not based on the indemnitor's *insurer's* express acceptance of the indemnitor's obligation to indemnify the indemnitee, but on the *indemnitor's* acceptance of that obligation. *See id.* at 26. Thus, contrary to Century Surety's contention, the fact that Century Surety refused to accept Rukh's indemnity obligations has no significance under *Indemnity*. Century Surety further contends that *Indemnity* could be distinguished based upon the fact that "appellants have not shown that the excess policy at issue in *Indemnity* contained the same 'Other Insurance' provision as is set forth in the Century Surety [policy]." Century Surety Br. at 15–16. However, nothing in *Indemnity* suggests that its holding was based on the particular language in the insurance policy's "Other Insurance" provision. Instead, the *Indemnity* court clearly held that "priority of coverage" under the terms of the insurance policy was "*irrelevant*" in light of the indemnity agreement between the insureds. *Indemnity*, 74 A.D.3d at 26 (emphasis added).

As to *Arch*, Century Surety presents substantially the same arguments as above, namely that *Arch* is distinguishable because the indemnitor's insurer in *Arch* accepted the indemnitor's indemnity obligation and the indemnitor's insurance policy contained an "Other Insurance" provision distinguishable from that in the Century Surety policy here. However, nothing in *Arch*'s reasoning suggests that either of these distinctions are relevant to its holding. The *Arch* court simply concluded that because "[indemnitees] were entitled to contractual indemnification from [the indemnitor] and a complete pass through of liability, [the indemnitor's insurance policy] must respond before the [insurance] policy issued to [indemnitees]." *Arch*, 175 A.D.3d at 438 (citing *Indemnity*, 74 A.D.3d at 26). Thus, we find no basis to conclude that either *Indemnity* or *Arch* compels a different result.

2008). In *Bovis*, the Appellate Division held that "[a]n insurance policy is a contract between the insurer and the insured," such that "the extent of coverage (including a given policy's priority vis-à-vis other policies) is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage." *Id.* at 145. Although we recognize that *Bovis* suggests a conclusion contrary to that which we reach today, we rely upon the fact that New York's Appellate Division issued the decisions in both *Indemnity* and *Arch* after *Bovis*, and we therefore consider these recent cases as more probative of how the New York Court of Appeals would decide the issue. The Appellate Division's decisions in *Indemnity* and *Arch* (which relied on *Indemnity* for its holding) departed from *Bovis* with respect to the effect of an indemnity agreement in these circumstances. Although neither *Indemnity* nor *Arch* expressly mentions *Bovis*, *Indemnity* did expressly decline to adopt the result in *Tishman Construction Corp. of New York v. Great American Insurance Co.* (*Tishman*), 53 A.D.3d 416 (1st Dep't 2008), a case substantially similar to *Bovis* that relied on *Bovis* to support its holding that an insurance policy's excess status would govern over an indemnity agreement. *See Indemnity*, 74 A.D.3d at 26. Thus, we view *Indemnity*'s analysis as a further indication that the Appellate Division has rejected the holding in *Bovis*, and we conclude that New York's highest court would adopt the *Indemnity/Arch* approach. Century Surety has failed to point to any New York case decided *after Indemnity* and *Arch*, and we do not find any, that would support Century Surety's understanding of New York law.

In addition to the guidance provided by the Appellate Division's more recent decisions in *Indemnity* and *Arch*, we conclude, after having reviewed the analysis in *Bovis*, that New York's highest court would find the rationale underlying that decision to be unpersuasive. As discussed above, under circumstances similar to those presented here, *Bovis* held that the extent of coverage is controlled by the relevant insurance policy terms and not by the terms of the underlying trade

8

contract. *Bovis*, 53 A.D.3d at 145. The *Bovis* court, however, also acknowledged the possibility that the indemnitee's insurer may end up tendering payment only *after* the indemnitor's excess insurance policy is fully exhausted as a result of the indemnitor's indemnity obligation to the indemnitee following a separate action to enforce the indemnity agreement—a result that would ultimately be contrary to the effect of its holding. *Id.* at 154. The *Bovis* court nonetheless reasoned that "[t]he possibility of this scenario playing out in the long run does not, however, have the effect, *at this stage*, of negating the priority of coverage among the applicable policies arising from the terms of those policies." *Id.* at 154–55 (emphasis added). *Bovis* therefore merely believed it appropriate to leave the indemnity question for a separate action and, significantly, did *not* determine that the indemnitor's insurer's excess status would *ultimately* negate the effect of the indemnity agreement between the insureds.

Contrary to the approach employed in *Bovis*, we anticipate that New York's highest court would not require a separate action to enforce the parties' indemnity agreement, and that the parties' rights and obligations based upon both the terms of the Century Surety policy and the underlying indemnity agreement should be determined in one action. Indeed, adopting the contrary approach set forth in *Bovis* would create a chain of litigation that would inevitably end with Century Surety still having to pay into the settlement amount and exhaust its policy limits before Admiral due to Rukh's agreement to indemnify LIRR. We believe that the later decisions in *Indemnity* and *Arch* rejected this two-step approach. Moreover, we find additional support in the various Circuit courts that, although not analyzing New York law, have also come to this same conclusion. *Accord St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272, 277 (4th Cir. 2004) (observing that "all indications are that most, if not all, jurisdictions to have faced the question of whether an indemnification agreement could relieve particular insurers of an obligation to pay, without resort to a separate action to enforce the indemnification agreement, have answered

9

in the affirmative," and predicting that "Virginia would conclude that the indemnification obligations set forth in the [underlying agreement] need not be set aside for a separate proceeding but should be considered in this case before allocating responsibility for the settlement liability according to the terms of the relevant policies"); *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 436 (5th Cir. 2003) (observing that "the clear majority of jurisdictions . . . gives controlling effect to the indemnity obligation of one insured to the other insured over 'other insurance' or similar clauses in the policies of the insurers, particularly where one of the policies covers the indemnity obligation," and concluding that Texas law would follow this rule); *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583, 587 (8th Cir. 2002) (predicting Arkansas law and holding that "it [was] unnecessary to resolve these issues about the 'other insurance' clauses" because "the indemnity agreement controls the outcome, not the 'other insurance' clauses"); *see also* 4Pt2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 11:375 ("The majority of courts that have addressed this issue have determined that the parties' indemnity agreement governs over their respective policies' 'other insurance' clauses."); 15 Steven Plitt et al., Couch on Insurance § 219:1 ("[A] contract with an indemnification clause . . . may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy.").

Finally, to the extent that Century Surety attempts to rely upon the decision in *State Farm Fire & Casualty Co. v. LiMauro*, 65 N.Y.2d 369 (1985), we find that case inapposite to the circumstances present here. In *LiMauro*, the New York Court of Appeals addressed, in the context of an automobile accident, the question of priority of coverage between separate car insurance policies issued to the owner and to the operator of one of the vehicles involved in the collision. *Id.* at 371–72. *LiMauro* did not involve any indemnification agreements between insureds and thus provides no guidance as to how the Court of Appeals would decide the issue in this case.

10

In short, we conclude that under New York law, Century Surety, as Rukh's insurer, is liable to pay into the underlying settlement and exhaust its policy limits before Admiral, LIRR's insurer. We reach this conclusion notwithstanding the "Other Insurance" provision in the Century Surety policy that purports to qualify the policy as a "true excess policy" because the indemnity agreement in the underlying trade contract between Rukh and LIRR governs the resolution of this case. Accordingly, we conclude that the district court erred in granting a declaratory judgment that Century Surety is not obligated to provide insurance coverage for the underlying action.[6]

*       *       *

We have considered all of Century Surety's remaining arguments and find them to be without merit. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Century Surety also argues for the first time on appeal that it should not be held liable to pay into the settlement amount because it did not participate in settlement negotiations, and it did not authorize Rukh to settle the underlying state court action as is required under the Century Surety policy. However, we decline to reach this argument because Century Surety did not preserve it for appeal and offers no reason why it failed to raise this issue below. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008).